UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO, 14-118-DLB-EBA

JARROD KELLY, et al.                                              PLAINTIFFS

v.            **MEMORANDUM OPINION AND ORDER**

ARRICK'S BOTTLED GAS SERVICE, INC.                                DEFENDANT

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

## I.    INTRODUCTION

This matter is before the Court upon Defendant Arrick's Bottled Gas Service, Inc.'s Motion for Summary Judgment (Doc. # 93) and Plaintiffs Jarrod Kelly and Micah Miller's Motion for Summary Judgment (Doc. # 108). Defendant seeks summary judgment on all of Plaintiffs' claims, while Plaintiffs seek summary judgment on Arrick's claims against Third-Party Defendants, Bobby and Patricia Coburn. The Motions are fully briefed (Docs. # 103, 108, 109, 110, and 111) and ripe for review. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This negligence action arises from a propane gas explosion that occurred on August 9, 2013 at Plaintiff Jarrod Kelly's home. Defendant, Arrick's Bottled Gas Service, Inc., was the propane gas supplier for Mr. Kelly's home, located at 555 Frontage Road, in Grayson, Carter County, Kentucky. Arrick's began service at the property, leased by Mr. Kelly and owned by Bobby and Patricia Coburn, in September 2007. (Doc. # 93-1 at 2). During the

summer of 2008, the Coburns decided to replace the old propane tank with Arrick's equipment. *Id.* After installing the tank, Arrick's tested the propane system, which showed no leaks. (Doc. # 93-3). When Arrick's switched the tank, it required Mr. Kelly to execute a "New Customer Agreement." (Doc. # 93-4). On that form, Mr. Kelly indicated that the propane gas would be used for cooking and the furnace, by circling two of the seven options printed on the form. *Id.* That Agreement also provided that Arrick's "remains the owner of the tank and regulators," while "the line and fittings" were Mr. Kelly's "responsibility." *Id.* Over the next five years, Arrick's made several service calls to the property to deliver propane. *Id.*

On August 9, 2013, Mr. Kelly planned to have a barbeque at his home. (Doc. # 93-5 at 7). In preparation for the barbeque, Mr. Kelly and a friend, Micah Miller, cleaned out Mr. Kelly's detached garage to access the grill. *Id.* at 8. Out of curiosity, the men went down to the detached garage's cellar to see if it had accumulated standing water from the previous days' rain. *Id.* The plaintiffs ignited their lighters to see, as the lights in the cellar were flickering. *Id.* at 9-11. Within a matter of seconds, the flames from their lighters traveled to the center of the room, where they met, and ignited a flash fire. *Id.* at 11. The plaintiffs were able to get out of the cellar, but suffered severe injuries. The cause of the fire, as determined by Kentucky State Police investigators, was propane gas, which had leaked from the old and unused line under the garage and "migrated into the cellar space of the garage and walls of the garage in sufficient quantity to cause an explosion." (Doc. # 93-2).

On August 7, 2014, Plaintiffs filed a Complaint against Defendant, alleging claims for common-law negligence, gross negligence, extra-hazardous activity, strict liability,

negligence *per se*, products liability, breach of implied warranty of fitness, punitive damages, violation of Kentucky's Consumer Protection Act, and res ipsa loquitur. (Doc. # 1). In response, the Defendant filed a Third-Party Complaint for indemnity, contribution, and apportionment against the owners of the property, Bobby and Patricia Coburn. (Docs. # 27 and 66). Defendant now moves for summary judgment on all of Plaintiffs' claims, arguing that Plaintiffs have failed to set forth any facts which support their claims. (Doc. # 93).[1] Plaintiffs also move for summary judgment on Defendant's cross-claims against Third-Party Defendants, arguing that Arrick's is only entitled to contribution, not indemnification. (Doc. # 108).

## III. ANALYSIS

### A. Applicable Law

Federal courts sitting in diversity apply federal procedural law. *Hanna v .Plumer*, 380 U.S. 460, 465 (1965). The substantive law of the forum state governs the claims asserted. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moore v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Accordingly, the Court will evaluate the parties' Motions in accordance with the Federal Rules of Civil Procedure and apply Kentucky law to Plaintiffs' negligence-based claims and the Defendant's indemnity claim.

### B. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any

---

1 In their Response to Defendant's Motion for Summary Judgment, Plaintiffs conceded "that the facts do not support the extra hazardous and strict liability claims, negligence per se claim, products liability claim, implied warranty of fitness claim, and Kentucky's Consumer Protection Statute claims." (Doc. # 103 at 1). Accordingly, those claims are **dismissed**.

3

material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, the entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the Court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment, by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

### C. Plaintiffs' Negligence Claim Against Defendant

"A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (referring to the third and fourth elements jointly as "consequent injury")).

#### 1. *Duty and Breach*

"Kentucky courts recognize a universal duty of care under which every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Lee v. Farmers Rural Elec. Co-op Corp.*, 245 S.W.3d 209, 212 (Ky. Ct. App. 2007) (internal quotations omitted). Ordinary care is "such care as a reasonably prudent person would exercise under the circumstances." *Slusher v. Brown*, 323 S.W.2d

870, 872 (Ky. 1959). Foreseeability is "determined by viewing the facts as they reasonably appeared to the party charged with negligence, not as they appear based on hindsight." *James v. Wilson*, 95 S.W.3d 875, 891 (Ky. Ct. App. 2002). However, "[f]oreseeable risks are determined in part on what the defendant knew at the time of the alleged negligence." *Pathways, Inc.*, 113 S.W.3d at 90. Therefore, if the defendant has superior knowledge, he will be "required to recognize that his conduct involves a risk of causing [injury] if a reasonable man would do so while exercising ... such superior knowledge." Restatement (Second) of Torts § 289. The existence of a duty is a question of law for the Court to decide. *Pathways, Inc.*, 113 S.W.3d at 88-89.

By contrast, whether a duty has been breached is a question of fact for the jury to decide. *Id.* So long as there is a genuine dispute as to a material fact concerning breach, such that a reasonable jury could find that the defendant was negligent, the Court is precluded from granting summary judgment. *Id.*; *see also Simons v. Strong*, 978 F. Supp. 2d 779, 783-84 (E.D. Ky. 2013) (stating that summary judgment is only appropriate if there is a "complete absence" of evidence that the defendant breached a duty owed to the plaintiff).

Defendant advances two arguments regarding its duties to Plaintiffs. First, Defendant argues that it did not owe a duty to maintain the propane lines and fittings because the New Customer Agreement assigned those responsibilities to Mr. Kelly. (Doc. # 93-1 at 6). Plaintiffs contest Defendant's reliance on the New Customer Agreement, arguing that it is irrelevant to the common-law tort duties that were owed by Defendant to its customers. (Doc. # 103 at 5-6).

5

Typically, common-law tort duties exist independently from any duties which parties may bargain for in a contract. While "[a]n exculpatory contract for exemption from future liability for negligence, whether ordinary or gross, is not invalid per se," those agreements "are disfavored and are strictly construed against the parties relying upon them." *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005) (citing . *Cobb v. Gulf Refining Co.*, 145 S.W.2d 96, 99 (Ky. 1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.*, 66 S.W. 411, 413 (Ky. 1902); *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App.1991); *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App.1978); Restatement (Second) of Contracts § 195(2) cmt a (1981); Restatement (Second) of Torts § 496B cmt a (1965); *City of Hazard Mun. Hous. Comm'n v. Hinch*, 411 S.W.2d 686, 689 (Ky. 1967). The language of an exculpatory agreement "must be 'so clear and understandable, that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." *Hargis*, 168 S.W.3d at 47 (citing 57A Am.Jur.2d, Negligence § 52 (2004)). Specifically, Defendant's New Customer Agreement will only exculpate it from liability for negligence if "(1) it explicitly expresses an intention to exonerate by using the word 'negligence;' or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision." *Id.* (citing 57A Am.Jur.2d, Negligence § 53 (2004)).

Defendant's New Customer Agreement simply states: "It has been explained to me that Arrick's Bottled Gas, Inc. remains the owner of the tank and regulators and that the line and fittings are my responsibility." (Doc. # 93-4). This sentence falls far short of the

6

minimum Kentucky law requires for exculpatory agreements. The New Customer Agreement does not mention the word "negligence," does not explicitly release Defendant from liability for personal injury caused by its own conduct, nor is protection of Defendant against liability for its acts or omissions the only reasonable construction of the contract language. In fact, the language of the New Customer Agreement could easily be understood as a maintenance cost arrangement; while Arrick's will maintain ownership of the tanks and regulators, if any repairs are needed on the lines or fittings, the costs of those repairs will be the customer's responsibility. Therefore, the New Customer Agreement does not exculpate Defendant from liability for Plaintiffs' alleged injuries or limit the duties it owed to Plaintiffs.

Second, the Defendant claims that it had no duty to maintain the propane lines and fittings because it had "no actual knowledge of the hidden dangers posed by the lines and fittings." (Doc. # 93-1 at 6-7). On the other hand, Plaintiffs argue that Defendant had not only a duty, but a heightened duty of care, and breached that duty. (Doc. # 103 at 5-7). Specifically, Plaintiffs rely on *Rowan v. Western Ky. Gas. Co.*, 82 F. Supp. 591 (W.D. Ky. 1949), where the district court explained the duty of gas companies to customers as follows:

> Gas, like electricity, is easily subject to control and of inestimable usefulness in the hands of those who know its propensities. To the great masses of people it is a deadly instrumentality incapable of perception of its presence until that presence is made known by calamity or tragedy from explosion or fire. Thus the law should and does place upon those who handle gas an obligation to handle it in such way that it is harnessed for benefit to the purchaser and profit to the seller. The "ordinary care" required is not the care of an ordinary person for the average person knows nothing of how to handle gas. Ordinary care in this instance means ordinary care by people learned in the handling of gas.

7

*Rowan*, 82 F. Supp. at 593. The *Rowan* court further held that a "gas company is chargeable with notice of the fact that gas pipes and mains are liable to rust and decay, and by reason of such rusting or decaying permit gas to escape" and found that "[b]eing thus chargeable, a duty devolves upon gas companies to inspect their pipes and mains and the connections therewith" and "use reasonable care in making these inspections." *Id*. Turning to breach, the *Rowan* court concluded that "if a leak could have been discovered and prevented by such an inspection, that fact of itself will be sufficient to charge the company with negligence." *Id*. And "whether a gas company which had no system of inspection, but waited for complaints before ordering an inspection, to detect a leak in the pipes, is chargeable with negligence" is a question for the jury. *Id*. In response, Defendant claims that the cases Plaintiff relies upon involve gas utility companies, as opposed to a propane gas supplier or marketer, and thus are inapplicable. (Doc. # 109 at 3).

While the duties of a gas utility company and a propane distributor may differ in certain respects, the difference is not so stark as to render *Rowan* irrelevant. Under Kentucky law, duties are not dependent on whether the alleged tortfeasor is a gas utility company or propane distributor. Rather, duties are controlled by the relationship between the gas utility company or propane distributor and the injured plaintiff. For example, when the gas company owns the lines and mains, it must inspect those lines and mains, as well as their connections, and is liable for leaks that emit therefrom. *See Rowan*, 82 F. Supp. at 593. However, a different rule applies when the gas company did not install, own, or control the leaking lines.

Specifically, Kentucky law provides that gas companies, which do not install, own, or control the pipes or appliances, are not liable for the condition in which those pipes or

appliances are maintained, and consequently, are not liable for injuries caused by a leak in those pipes or appliances, of which the company has no knowledge. *See Holsclaw v. Louisville Gas & Elec. Co.*, 100 S.W.2d 805 (Ky. 1936) (holding that a gas company is under no duty to inspect the gas lines or connections owned by others, and its duty extends no further than to exercise ordinary care to see that its own lines are in proper condition, unless it has actual notice that there is a leak or other trouble in connecting lines owned by others; then, in that event, it becomes its duty to cut off the gas or to take other proper action to prevent danger to person or property); *see also Wilson Gas Utilities Corp. v. Baker*, 124 S.W.2d 489 (Ky. 1939) (holding that because the defective gas pipe, from which the gas escaped and caused the explosion, was installed by its owner, not by the gas company, the court applied what it stated to be the "well-settled rule" from *Holsclaw*); *Bruce v. Alley*, 391 S.W.2d 678 (Ky. 1965) (court found there was a genuine question of material fact as to whether the installer of a gas floor furnace was liable for improperly installing or venting the furnace after Plaintiff suffered carbon monoxide poisoning).

Plaintiffs highlight three alleged failures by Defendant which constitute negligence: (1) failure to perform a "visual inspection of the entire propane system" when Defendant installed the propane tank and regulators, (2) failure to warn Plaintiffs about "the dangers of metal corrosion or the dangers of unused lines," and (3) failure to "notice and warn of the dangerous defects in the aging propane system." (Doc. # 103 at 4). In response to this alleged negligence, Defendant argues that it had no actual knowledge of the dangers posed by the lines and fittings and that the leak originated from a line which it did not have responsibility for.

Under Kentucky law, Defendant owed Plaintiff a duty to exercise ordinary care and prevent foreseeable injury during installation of the propane tank. Although the Defendant performed a leak check at the time of installation, which apparently showed no leaks (Doc. # 93-3), a genuine factual dispute exists as to whether Defendant's visual inspection of the propane system at that time was sufficient. (Doc. # 103 at 8-11). Plaintiff asserts that Defendant should have known about the unused line, although buried beneath the ground, for the following reasons: the branch line that ran to the garage was visible from the propane tank, there was a chimney on the garage, and the piping and regulators at the garage were above ground. (Doc. # 103 at 8-10). Plaintiff further claims that Defendant's training program and industry standards require a visual inspection of the entire propane system. (Doc. # 103 at 8; Doc. # 103-2 at 7).

Viewing the evidence in the light most favorable to the Plaintiffs, if the Defendant would have conducted a sufficient inspection of the propane system, then the unused and dangerous line would have been detected and Defendant would have been on notice that there was a leak or other trouble in the connecting lines; and consequently, had a duty to cut off the gas or to take other proper action to prevent danger to Plaintiffs. Accordingly, a reasonable jury could find that Defendant breached their duty to Plaintiffs by failing to conduct an adequate inspection at the time of tank installation.

### 2. *Causation*

The Kentucky Supreme Court has adopted the substantial factor test for causation, set forth in the Restatement (Second) of Torts § 431. *Pathways, Inc.*, 113 S.W.3d at 92. Under this test, the "actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm." *Id.* (quoting Restatement

(Second) of Torts § 431). The term "substantial factor" is explained as follows:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent ... [T]his is necessary, but is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophical sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431, cmt. a.

The Restatement further provides that lapse of time is an important consideration "in determining whether the actor's conduct is a substantial factor in bringing about harm to another." Restatement (Second) of Torts § 433(3). "Experience has shown that where a great length of time has elapsed between the actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof." *Id.* at cmt. f. In some cases, "the effect of the actor's conduct may thus have become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors which have contributed." *Id.* "However, where it is evident that the influence of the actor's negligence is still a substantial factor, mere lapse of time, no matter how long, is not sufficient to prevent it from being the legal cause of the other's harm." *Id.*

Causation is a mixed question of law and fact. *Pathways, Inc.*, 113 S.W.3d at 89. "The court has a duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has

11

been a substantial factor in causing the harm to the plaintiff.'" *Id*. "Generally, the existence of legal cause is a question of fact for the jury." *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 872 (Ky. Ct. App. 2001) (citing *Huffman v. S.S. Mary & Elizabeth Hospital*, 475 S.W.2d 631 (Ky. 1972)). "It only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference." *Id*.

"The claimant has the burden to prove legal causation; however, it is well recognized that 'legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm.'" *Bailey*, 95 S.W.3d at 872-73 (citing *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). "To find causation, the jury naturally draws inferences from circumstantial evidence." *Bailey*, 95 S.W.3d at 872-73. "These inferences, however, must be reasonable, that is they must 'indicate the *probable*, as distinguished from a *possible* cause.'" *Id*. (citing *Briner v. General Motors Corp.*, 461 S.W.2d 99, 101 (Ky. 1970)).

Defendant claims that Plaintiffs have failed to establish that it's negligence was the proximate cause of Plaintiff's injuries because the explosion was caused by a leaking pipe, which was Plaintiff's responsibility, and which Defendant did not have actual knowledge of. (Doc. # 93-1 at 7-8). Specifically, Defendant claims that Plaintiff's "allegation that Arrick's would have found the corroded line had Arrick's completed a proper inspection of the property" is incorrect because Defendant performed a leak check following installation of the tank and because "the propane line in the area where the leak occurred was buried under a layer of soil and was not visible." (Doc. # 109 at 3-4). However, Plaintiffs argue that Defendant's failure to adequately inspect the propane system and warn of the dangers was the proximate cause of Plaintiffs' injuries. (Doc. # 103 at 10). Plaintiffs claim that, had

12

Defendant complied with its duties and conducted a thorough visual inspection of the entire propane system, the unused and dangerous line would have been discovered, and removal of the line would have been recommended. *Id.* at 11.

Considering the evidence in the light most favorable to the Plaintiff, there is a sufficient "'quantum of circumstantial evidence' to raise a factual issue as to legal causation." *Bailey*, 95 S.W.3d at 873. Ralph Arrick, the owner of Defendant company, and Russell Ogle, M.D., Defendant's expert, both testified that once aware of an unused line, they would recommend removing the line. (Doc. # 98-1, 11:7-18; Doc. # 101, 54:7-17). This testimony supports Plaintiffs' allegations that if the Defendant would have conducted a sufficient inspection of the entire propane system, then the unused and dangerous line could have been detected and removed, preventing Plaintiffs' injuries.

Therefore, the alleged breach of Defendant's duty to conduct a reasonable inspection of the propane system, and take other proper action to prevent danger to Plaintiffs, such as remove the unused line, was likely a substantial factor in bringing about the harm to Plaintiffs. Although approximately five years lapsed between Defendant's allegedly negligent inspection and the explosion, it is evident that the influence of the Defendant's negligence remained a substantial factor because this was the only inspection of the propane system required; thus, a thorough and diligent inspection was critical. Accordingly, Defendant has failed to satisfy its burden of showing "an absence of evidence to support [Plaintiffs] case" and Defendant is not entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**D.     Plaintiffs' Punitive Damages Claim Against Defendant**

Under Kentucky law, punitive damages are available if the plaintiff can prove by

clear and convincing evidence that the defendant acted with oppression, fraud, or malice. Ky. Rev. Stat. Ann. § 411.184(2).[2] Punitive damages may also be awarded upon a showing of gross negligence. *Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998). "[T]he prevailing understanding defines gross negligence as a wanton or reckless disregard for the safety of other persons." *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2003). "It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.*[3]

Plaintiffs assert that the "evidence will show a pattern of malfeasance by" Defendant, from which a jury could determine that the Defendant's "conduct was outrageous because of what appears to be a reckless indifference in light of the potential explosive dangers involved." (Doc. # 103 at 15).

Having reviewed the record in detail, the Court sees no evidence which would support a finding that Defendant's actions or omissions constitute gross negligence. There is simply no indication that Defendant did anything more than commit an oversight when

---

[2] Although the Kentucky Supreme Court held Ky. Rev. Stat. Ann. § 411.184(1)(c) unconstitutional in *Williams v. Wilson*, 972 S.W.2d 260, 268 (Ky. 1998), the Court expressed "no opinion ... as to the constitutionality of" Ky. Rev. Stat. Ann. § 411.184(2). "In subsequent decisions, the Kentucky Supreme Court has reiterated that" Ky. Rev. Stat. Ann. § 411.184(1)(c) "is unconstitutional, but has applied other sections of the statute, specifically," Ky. Rev. Stat. Ann. § 411.184(2). *Anderson v. Wade*, 33 F. App'x 750, 758-59 (6th Cir. 2002) (surveying Kentucky case law). Therefore, the Court will follow the lead of the Sixth Circuit and the Kentucky Supreme Court and apply Ky. Rev. Stat. Ann. § 411.184(2).

[3] Moreover, punitive damages cannot be assessed "against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." Ky. Rev. Stat. Ann. § 411.184(3); *see also Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001) (noting that "Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages"); *Jones v. Blankenship*, Civ. An. No. 6:06-109, 2007 WL 3400115, at *3 (E.D. Ky. Nov. 13, 2007) (explaining that a plaintiff must prove that the employee was grossly negligent and that the employer authorized, ratified, or should have anticipated the employee's gross negligence).

14

conducting the visual inspection of Plaintiff's propane system. This misconduct does not have the "character of outrage." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985). Punitive damages are warranted in a situation like *Horton*, where the gas company had actual knowledge that gas had escaped into the house and that gas was likely still leaking, but failed to cut off the gas. *See id.* Unlike the gas company in *Horton*, there are no facts to support an allegation that Defendant's alleged negligence amounts to anything more than ordinary negligence. Accordingly, Defendant is entitled to summary judgment on Plaintiff's punitive damages claim.

### E. Defendant's Indemnity and Contribution Claims Against Third-Party Defendants

#### 1. *Indemnity*

Kentucky recognizes both contractual and common-law indemnity. Contractual indemnity exists when parties agree that in the event one is held liable, the other will pay whatever damages result.[4] On the other hand, common-law indemnity "is available to one exposed to liability because of the wrongful act of another with who he/she is not in pari delicto." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). An action for common law indemnity arises "(1) [w]here the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured,

---

4   The Court declines to consider contractual indemnity, despite Defendant's vague assertions regarding the New Customer Agreement and the Coburns duties under that agreement. (Doc. # 110 at 5). Because "general principles of contract construction apply equally to indemnification agreements," and the Coburns did not sign the New Customer Agreement, there is no enforceable indemnification agreement at issue between Defendant and the Coburns.

and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." *Id.* (quoting *Louisville R. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1934).

"The primary Kentucky precedent on this issue remains *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 223 S.W.2d 165 (1949), in which the hotel company, which has been held liable for injuries sustained by a pedestrian who was injured in an encounter with an unsecured manhole lid on the hotel's property, was held entitled to indemnity against the fuel company, whose employee had left the lid unsecured after unloading a delivery of coal into the manhole." *Degener*, 27 S.W.3d at 780. When considering the propriety of indemnity, courts must determine which party is the "active wrongdoer." *Id.* at 781. The Kentucky Supreme Court has held that when "liability is premised solely upon [a party's] failure to prevent" a certain type of harm from occurring, which allowed the active wrongdoer to inflict the injury on the plaintiff, the parties are not in pari delicto. *Id.* Thus, the "active wrongdoer" is not entitled to complete indemnity against the "passive wrongdoer." *Id.*

Acknowledging that "[w]ith a little ingenuity in phrasing, negligence can be made to be either 'active' or 'passive,'" there is no genuine issue of material fact as to whether the Coburns are the "active wrongdoer" or the primary tortfeasor. *Id.* at 785 (J. Keller, dissenting). Like in *Brown Hotel* and *Degener*, the Coburns' liability is premised solely upon their "failure to maintain the premises and keep the premises in a clean and safe condition, as well as [their] failure to warn tenants of the existence or condition of the gas line." (Doc. # 27). Defendant, on the other hand, was the party with superior knowledge of propane gas and the dangers it and unused lines posed, who filled the tank with propane

16

gas, which would be pumped through the lines on the property. Therefore, no reasonable jury could find that the Coburns were the "primary, efficient and direct cause of the accident" and the "positive antecedent negligence" which injured Plaintiffs. *Brown Hotel Co.*, 224 S.W.2d at 167.

Even taking the facts in the light most favorable to Defendant, the Coburns and the Defendant both abdicated their respective responsibilities to thoroughly inspect the propane system and committed negligence of the same nature. In short, a reasonable jury could only find that Defendant and the Coburns were in pari delicto. Accordingly, indemnification is not the proper remedy and Plaintiffs are entitled to summary judgment against the Defendant on its indemnity claim.[5]

### 2. *Contribution and Apportionment*

Instead, contribution is the appropriate remedy in the case *sub judice*. "The right to contribution arises when two or more joint tortfeasors are guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff's damages." *Degener*, 27 S.W.3d at 778. "In that scenario, the tortfeasors are said to be 'in pari delicto.'" *Id.* (citing *Lexington Country Club v. Stevenson*, 390 S.W.2d 137, 143 (Ky. 1965).

Under Kentucky law, fault may only be apportioned among tortfeasors who have been a party to the litigation or settling non-parties. *See* Ky. Rev. Stat. Ann. 411.182; *see*

---

5     Defendant argues that a ruling on its indemnity claim would be premature because there has not been a liability determination. (Doc. # 110). While Kentucky law provides that "[i]ndemnity is not an issue until fault has been determined," these cases stand for the proposition that one who is not, or has not yet been determined, liable, cannot be required to indemnify another. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 253 (Ky. 1995) *overruled on other grounds by Martin v. Ohio Cty. Hosp. Corp.*, 295 S.W.2d 104 (Ky. 2009). However, courts can grant summary judgment on indemnity claims where, as here, indemnity is sought from a party, which a reasonable jury could not determine to be the "active wrongdoer."

*also Baker v. Webb*, 883 S.W.2d 898, 900 (Ky. Ct. App. 1994) ("When the statute states that the trier-of-fact shall consider the conduct of 'each party at fault,' such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large.").

Here, the Coburns settled with Plaintiffs prior to litigation and have also been named as parties as a result of Defendant's Third-Party Complaint. (Doc. # 27). And, the Court finds that the Defendant has stated allegations against the Coburns that, if proved at trial, would warrant an apportionment instruction.[6] However, because Defendant does not assert a valid claim for indemnity, and Defendant concedes that contribution/apportionment is not an independent cause of action, (Doc. # 110 at 3, n.1), the Court will "follow the practice established by other federal courts applying Kentucky law" and dismiss Defendant's Third-Party Complaint for failure to state a claim on which relief can be granted. *Compton v. City of Harrodsburg*, Civil No. 5:12-CV-302, 2013 WL 5503195, *5 (E.D. Ky. Oct. 2, 2013); *see also Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2004); *Hayes v. MTD Prods., Inc.*, Civil No. 3:05-cv-781, 2007 WL 437687, *1-2 (W.D. Ky. Feb. 5, 2007).

## IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendant Arrick's Bottled Gas Service, Inc.'s Motion for Summary Judgment

---

6 The Court stresses that it is not granting an apportionment instruction at this time. Such an instruction will be given only if Defendant sets forth evidence a trial on which a reasonable juror could find the Coburns at fault. *See Owens Corning Fiberglass Corp. v. Parrish*, 58 S.W.3d 467, 471 n. 5 (Ky. 2001) ("Fault may not be properly allocated to a party, a dismissed party or settling nonparty unless the court or the jury first finds that the party was at fault.")

(Doc. # 93) is **granted in part** with respect to Plaintiff's punitive damages claim, and **denied in part** with respect to Plaintiff's negligence claim;

(2) Plaintiffs Jarrod Kelly and Micah Miller's Motion for Summary Judgment on Defendant's Third-Party Complaint (Doc. # 108) is **granted**; and

(3) Defendant's Third Party Complaint (Doc. # 27) is **dismissed**.

This 14th day of September, 2016.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\Opinions\Ashland\14-118 MOO.wpd